UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

GALAXY CABLE, INC.,

          Plaintiff,

v.                                                       Case No.  5:05-cv-303-Oc-10GRJ

CABLEVISION OF MARION COUNTY, LLC,

          Defendant.
_____

## ORDER

Pending before the Court is the Motion For Summary Final Judgment By Cablevision Of Marion County, LLC (Doc. 34), Galaxy Cable, Inc.'s response thereto (Docs. 44 & 45) and Plaintiff's Motion For Partial Summary Judgment (Doc. 39), supporting memorandum (Doc. 40), Statement of Uncontroverted Material Facts (Doc. 41) and Defendant's response thereto. (Doc. 50.)

### I. FACTS AND BACKGROUND

Galaxy Cable, Inc. ("Galaxy"), is a Delaware corporation with its principal place of business in Sikeston, Missouri.[1]  Cablevision is a Florida Limited Liability Company with its principal place of business in Ocala, Florida.[2]  This action arises out of Cablevision's purchase of various cable television contracts and systems in Marion County, Florida

---

[1] See Doc. 31, ¶3; Doc. 33, ¶3.

[2] See id., ¶4; Doc. 33, ¶4.  Jurisdiction is based on diversity of citizenship and amount in controversy.  See 28 U.S.C. §1332.  This case has been consolidated for all purposes with the case styled *Dirk Leeward v. Galaxy Cable, Inc., 5:05-cv-51-WTH-GRJ.*  See Doc. 30.

from Galaxy.[3]  The parties dispute whether the cable contract for the Bahia Oaks and Oak Creek properties ( the "Bahia Oaks contract") was included in the purchase.

The Bahia Oaks contract was at issue during the parties' negotiations.[4]  Galaxy insisted that the Bahia Oaks contract had to be included in the sale.[5]  However, before the Bahia Oaks contract could be assigned to Cablevision, Galaxy had to obtain the written consent of the property owner -- Dirk Leeward.[6]  While Leeward was willing to consent to the assignment under the same terms as the original Bahia Oaks contract, Cablevision was unwilling to take assignment of the Bahia Oaks contract unless the terms were changed.[7]  At some point prior to the closing, Leeward forwarded to King a "Consent to Assignment" drafted by Leeward's attorney but King refused to sign the document.[8]

---

[3] See Doc. 31, ¶1.

[4] See e.g., Doc. 50, Exhibit D (Deposition of Holly Rehder, page 52); Doc. 45, Exhibit 5 (Deposition of Jess King, pages 92-94).

[5] See Doc. 50, Exhibit D (Deposition of Holly Rehder, page 52); see also Doc. 50, ¶3.

[6] See Schedule 4.C, attached to Galaxy-Cablevision Agreement (Doc. 31, Exhibit 1).  While there is some dispute as to whether Dirk Leeward and Galaxy Cable, Inc. are the successors to the Bahia Oaks contract, the parties agree that it is not relevant to the instant motions.  See Doc. 34, ¶3; Doc. 44, ¶3.

[7]  See Doc. 45, Exhibit 3 (Deposition of Dirk Leeward, pages 107-08, 119-20); Doc. 50, Exhibit G (Deposition of Jess King, page 179-80).  Jess King testified that the existing agreement for Bahia Oaks had several problems -- 40% of the revenue went to the owner, it was a year to year contract with a 90-day out clause, the system had to be maintained in state-of-the art and the cable plant was owned by the developer, not Galaxy.  See Doc. 50, Exhibit (Deposition of Jess King, pages 179-80); see also, Doc. 50, Exhibit F (Deposition of Jay Dugan, pages 109-10, 39-40).

[8] See Doc. 45, Exhibit 3 (Deposition of Dirk Leeward, pages 107-08); Doc. 45, Exhibit 5 (Deposition of Jess King, pages 146-47).

On April 29, 2005, Bill Chain, President of Galaxy, and Jess King, President of Cablevision had one or two brief telephone conversations.[9] Chain called King and asked him whether they were going to close the deal.[10] Chain asked whether the hold up was on the money.[11] King told him no, that it was "the consents, we've got to have the consents and they have to be changed in accordance with what I'm looking for."[12] In the second phone call, King advised Chain that he had just received commitments that two of the properties had agreed to consent and make the requested changes to the agreements.[13] When asked if he was now ready to close, King said, "I'm ready to close if you are."[14] At no point during these conversations did King and Chain specifically discuss "waiver," "Bahia Oaks" or any other property by name.[15]

That same afternoon, although there was no consent for Bahia Oaks, the parties executed the Galaxy-Cablevision Agreement.[16] The Agreement explicitly referenced Bahia Oaks and Oak Creek at least six times.[17] King did not ask anyone to change the

---

[9] See Doc. 40, Exhibit 1 (Deposition of Jess King, pages 131-33); Doc. 50, Exhibit H (Deposition of Jess King, pages 96-97, 135-36); Doc. (Affidavit of Bill Chain, ¶4)

[10] See Doc. 50, Exhibit H (Deposition of Jess King, pages 96, 134.)

[11] See id.

[12] See id., page 134.

[13] See id., pages 96, 135.

[14] See id., page 135.

[15] See Doc. 40, Exhibit 2 (Affidavit of Bill Chain, ¶¶5-6); Doc. 40, Exhibit 1 (Deposition of Jess King, pages 208-14, 235.)

[16] See Doc. 40, Exhibit 1 (Deposition of Jess King, pages 132-33.)

[17] See Galaxy-Cablevision Agreement, Schedules A, B, 2.A.iii, 3, 4.C, and 4.F;

Agreement to reflect the purported waiver before he signed the Agreement.[18]   To date, there has been no consent for the transfer of the Bahia Oaks contract from Galaxy to Cablevision.[19]

## II.  SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party."[20]  As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.   If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[21]  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

---

[18] See Doc. 40, Exhibit 1 (Deposition of Jess King, page 16.)

[19]  See Doc. 50, Exhibit A (Deposition of Dirk Leeward, page 141); Doc. 50, Exhibit B (Deposition of Holly Rehder, page 21); Doc. 50, Exhibit C (Deposition of Jess King, pages 22 & 184); see also, Doc. 40, ¶5.

[20] See Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

[21] Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

## III.  DISCUSSION

### A.     Cablevision's Motion For Summary Judgment

Cablevision argues that it is entitled to judgment as a matter of law because there is no enforceable obligation between Cablevision and Galaxy for Cablevision to furnish cable television services in Bahia Oaks and Oak Creek.  Cablevision contends that no obligation arose for Cablevision to provide cable television services to Bahia Oaks because there was no consent to assignment for Bahia Oaks prior to closing.

Cablevision's argument is based on its position that pursuant to Paragraph 6(d)(1)[22] of the Galaxy-Cablevision Agreement, all consents had to be obtained prior to closing.   While this provision requires Galaxy to use "commercially reasonable efforts to obtain as promptly as possible all Consents" and requires Cablevision to fully cooperate with Galaxy and do all things reasonably necessary to assist Galaxy in obtaining all consents, it does not mandate that the consents must be obtained prior to closing.  Moreover, Cablevision overlooks Paragraph 6(d)(2) which clearly contemplates that

---

[22] Paragraph 6(d)(1) provides:

<u>Consents.</u>  The Seller shall use commercially reasonable efforts to obtain as promptly as possible all Consents.  In addition:

(1)     The Buyer shall fully cooperate with the Seller, do all things reasonably necessary to assist the Seller, and use its commercially reasonable efforts at its expense to assist the Seller in obtaining all Consents necessary for the transfer of or assignment to the Buyer of the Agreements, Licenses and Assumed Contracts, including the furnishing of all financial and other information reasonably required by the party whose Consent is being sought.

5

consents could be obtained after the closing.[23]   As such, the plain language of the Agreement does not require that all Consents must be obtained prior to closing. Additionally, there are material issues of fact as to whether Cablevision breached the Galaxy-Cablevision Agreement by not signing the necessary documents to transfer the Bahia Oaks contract from Galaxy to Cablevision.

Accordingly, Cablevision's Motion For Summary Final Judgment (Doc. 34) is due to be **DENIED**.

**B.     Galaxy's Motion For Partial Summary Judgment**

One of Cablevision's defenses to this action is that during the telephone calls on April 29, 2005, Chain orally waived any requirement in the Galaxy-Cablevision Agreement obligating Cablevision to provide service to Bahia Oaks.[24]   Galaxy has moved for summary judgment solely on this "waiver defense."

Galaxy argues that summary judgment should be granted for two reasons.  First, Galaxy argues that the telephone conversations between King and Chain did not contain any substance that anyone reasonably could conclude waived Cablevision's

---

[23]  Paragraph 6(d)(2) provides: "Subsequent to Closing, the Seller shall continue to use its commercially reasonable efforts to obtain in writing as promptly as possible any Consent required to be obtained that was not obtained on or before Closing.  The obligations set forth in this subsection shall survive Closing and shall not be merged in the consummation of the contemplated transactions."

[24] Cablevision raises this waiver defense in its Seventh Affirmative Defense:

> Before agreeing to close on the Asset Purchase Agreement, Jess King, for Cablevision, and William Chain, for Galaxy Cable, Inc., orally agreed to waive any requirement in the Asset Purchase Agreement obligating Cablevision to provide service to Bahia Oaks or orally amended the Asset Purchase Agreement to eliminate any requirement to provide service to Bahia Oaks.

Doc. 33, ¶ ; see also Doc. 40, Exhibit 1 (Deposition of Jess King, page 197)(testifying that it is a "fair paraphrase" of his position that "the only reason that [Cablevision is]  not obligated to assume and run, the Bahia Oaks system is because Mr. Chain on behalf of Galaxy waived that requirement").

6

obligation to take the Bahia Oaks contract.  Second, Galaxy contends that Cablevision cannot prevail on an oral waiver defense because it subsequently executed the Galaxy-Cablevision Agreement that had numerous references to Bahia Oaks and included an integration clause.

While there is dispute as to what King and Chain thought these brief telephone conversations meant, any argument that Chain orally waived the requirement to provide services to Bahia Oaks is barred by the clear and unambiguous language of the Galaxy-Cablevision Agreement.  It is undisputed that after Chain purportedly waived the requirement, King did not ask anyone to change the Agreement to reflect the alleged waiver.  Rather, King signed the Agreement, which references Bahia Oaks at least six times, including on the list of systems covered by the Agreement.

Moreover, the Agreement contains a so-called merger or integration clause that provides:

> <u>Entire Agreement; Amendments</u>.  This Agreement and the Exhibits and Schedules constitute the entire agreement between the parties with respect to its subject matter and supersedes all prior agreements and understandings, oral or written, with respect thereto.  This Agreement may not be modified orally, but only by an agreement in writing signed by the party or parties against whom any waiver, change, amendment, modification, or discharge may be sought to be enforced.[25]

This provision evidences that the parties intended for the Agreement to be the complete and final expression of the parties' agreement.[26]  Accordingly, parol evidence

---

[25] See Galaxy-Cablevision Agreement, ¶12g.

[26] See <u>Jenkins v. Eckerd Corp</u>., 913 So.2d 43, 53 (Fla. App. Ct. 2005)(noting that a merger clause is a "highly persuasive statement that the parties intended the agreement to be totally integrated and generally works to prevent a party from introducing parol evidence to vary or contradict the written terms).

regarding the alleged oral waiver cannot be used to vary or contradict the written terms of the Agreement, which clearly and unambiguously include Bahia Oaks.[27]

Accordingly, Galaxy's Motion For Partial Summary Judgment (Doc. 39) is due to be **GRANTED**. Partial Summary Judgment is entered in favor of Galaxy solely as to Cablevision's seventh affirmative defense of waiver.[28]

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on May 30, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
  All Counsel

---

[27] See id.; Rodriquez v. Tombrink Enterprises, Inc., 870 So.2d 117, 119 (Fla. Dist. Ct. App. 2003)(affirming summary judgment on breach of oral contract claim based on an integration clause).

[28] Because the granting of partial summary judgment only resolves one of the affirmative defenses raised by Cablevision, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure it is premature for the Clerk to enter any form of final judgment. Further, the order is subject to revision at any time before the entry of final judgment.