UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DIRK LEEWARD,

                Plaintiff,

v.

GALAXY CABLE, INC.,

                Defendant/Plaintiff,

v.                                                    Case No.  5:05-cv-303-Oc-10GRJ

CABLEVISION OF MARION COUNTY, LLC,

                Defendant.
_____/

## ORDER

Pending before the Court are: (1) Cablevision's Motion for Partial Summary Judgment (Doc. 85) and (2) Plaintiff, Galaxy Cable, Inc.'s Motion for Partial Summary Judgment on the Issue of "State of the Art." (Doc. 98.) Cablevision and Galaxy have each filed responses in opposition to the motions for partial summary judgment. (Docs. 113 and 99). For the reasons discussed below, Galaxy's Motion for Partial Summary Judgment on the Issue of "State of the Art" (Doc. 98) is due to be **GRANTED** and Cablevision's Motion for Partial Summary Judgment (Doc. 85) is due to be **DENIED**.

## I. BACKGROUND AND FACTS

This action arises out of an asset purchase agreement (the "APA") in which Defendant, Cablevision of Marion County, LLC ("Cablevision") purchased various cable television contracts and systems from Plaintiff, Galaxy Cable, Inc. ("Galaxy"). (Doc. 103.) Both motions for partial summary judgment address the same issue - that is

whether Galaxy or Cablevision is liable for the cost of bringing the Bahia Oaks cable system up to "state of the art."

The facts, as outlined below, are either not contested by the parties and/or have been stipulated to by the parties in their Joint Pretrial Statement. Pursuant to a cable services contract dated November 16, 1990, and amendments thereto, Galaxy provided cable television service to residents of Marion County subdivisions known as Bahia Oaks and Oak Creek (collectively, "Bahia Oaks) (the "Bahia Oaks Contract"). The Bahia Oaks Contract provided among other things that Galaxy would maintain the Bahia Oaks cable system as a "state of the art" cable system.[1] The Bahia Oaks Contract was entered into between Dirk Leeward and Galaxy Telecom, L.P, the legal predecessor to Galaxy Cable, Inc.[2] It is undisputed that Galaxy did not maintain the Bahia Oaks cable system as a "state of the art" system as defined in the Bahia Oaks Contract.[3]

In December, 2004, Galaxy and Cablevision began negotiations for the purchase and sale of certain of Galaxy's Marion County cable assets, including the Bahia Oaks Contract.[4] Cablevision knew that the Bahia Oaks cable system had not been maintained as a "state of the art" system prior to executing the APA and knew of the

---

[1] See Doc. 120, IX, ¶ 2.

[2] See Doc. 120, IX, ¶¶ 3-4.

[3] See Doc. 120, IX, ¶ 6.

[4] See Doc. 120, IX, ¶ 8.

obligation of the operator under the Bahia Oaks Contract to maintain the cable system as a state of the art cable system.[5]

On April 29, 2005, the parties concluded their negotiations and executed the APA, an agreement for the purchase and sale of all of Galaxy's South Marion County cable assets. Pursuant to the terms of the APA, a due diligence period was to take place between the date of signing and the date of closing on the APA. However, Cablevision decided to waive this due diligence period and simultaneously signed and closed the deal with Galaxy.[6]

## II. PENDING MOTIONS AND POSITIONS OF THE PARTIES

### A. Pending Motions

Pursuant to Fed. R. Civ. P. 56 Cablevision requests partial summary judgment as to the issue of Galaxy's responsibility to bring the Bahia Oaks cable television system up to the "state of the art." Without referencing any particular claims or defenses raised in the pleadings, Cablevision asserts that under the terms of the APA Galaxy - and not Cablevision - is responsible to install a "state of the art" cable system in Bahia Oaks.

Although Galaxy's counter motion for summary judgment addresses the issue of which party is responsible to install a state of the art cable system in Bahia Oaks, Galaxy specifically requests partial summary judgment with regard to Cablevision's third amended counterclaim and with regard to Cablevision's second, third, fifth and eighth

---

[5] See Doc. 99, Ex. D, King Depo, at p. 100, line 16 through p. 102, line 4. The President of Cablevision, Mr. Jess King, when asked prior to the execution of the APA how he would characterize the Bahia Oaks system replied: "the systems stink." See, also, Doc. 99, Ex. I, Decl. of Joseph Ferrell.

[6] See Doc. 120, IX, ¶ 14.

affirmative defenses (Doc. 80), to the extent that these defenses concern the issue of "state of the art".

## B. Positions of the Parties

### *i. Cablevision's Motion for Partial Summary Judgment*

Relying principally upon paragraphs 2c and 6a of the APA, Cablevision argues that the Bahia Oaks Contract was not an "assumed obligation" under the APA.

Section 2c of the APA states in relevant part that, "all obligations and liabilities arising out of or relating to ownership of the Assets or operation of the Systems and arising prior to the Adjustment Time other than the Assumed Obligations shall remain and be the obligations and liabilities solely of the Seller [Galaxy]."[7] Cablevision contends that because Galaxy's obligation to maintain the Bahia Oaks cable television system as "state of the art" arose prior to the adjustment time, this obligation is not an assumed obligation of Cablevision, as that term is used in paragraph 2c of the APA.

Further, relying upon paragraph 6a of the APA - which states in relevant part that: "...the Seller shall...perform its obligations under all of the Contracts without default..."[8] - Cablevision argues that because Galaxy did not perform under the Bahia Oaks Contract without default (e.g., failing to maintain the cable system at the "state of the art" standard), Galaxy breached paragraph 6a of the APA.

Accordingly, Cablevision concludes that it did not assume the obligations of the Bahia Oaks contract under the terms of the APA and, as such, the obligation to provide

---

[7] Doc. 99, Ex. J, p. 13.

[8] *Id* at pp. 20-21.

Bahia Oaks with "state of the art" equipment and service remains the obligation and liability solely of Galaxy.

### ii. *Galaxy's Motion for Partial Summary Judgment*

Galaxy requests partial summary judgment in its favor with regard to Cablevision's third amended counterclaim and with regard to Cablevision's second, third, fifth and eighth affirmative defenses.

Cablevision's third amended counterclaim (Doc. 103) consists of one claim for damages for breach of the APA based upon Galaxy's purported breach of paragraph 2c of the APA because Galaxy failed to provide "state of the art" equipment and service prior to the adjustment time as defined in the APA. Cablevision requests that if it is deemed to be responsible to operate the Bahia Oaks cable system and bring the system up to the state of the art standard provided under the terms of the Bahia Oaks Contract, Galaxy should be liable to reimburse Cablevision for all costs to bring the system up to the "state of the art. "

All four of Cablevision's affirmative defenses, challenged by Galaxy in its motion for partial summary judgment, deal with the issue of "state of the art." In its second, fourth, fifth and eighth affirmative defenses, Cablevision asserts the equitable remedies of unclean hands, estoppel, detrimental reliance and failure to mitigate damages. Cablevision alleges that Galaxy breached paragraphs 2c and 6a of the APA by failing to maintain the Bahia Oaks cable system at a "state of the art" standard and therefore should be denied equitable relief.

In Galaxy's response to Cablevision's motion for summary judgment Galaxy argues that Cablevision is attempting to "twist standard contractual language" in an

effort to create a claim for a breach of contract. Galaxy argues that Cablevision's reliance on paragraph 2c of the APA is misplaced as this paragraph does not concern the obligation on an ongoing basis to maintain the cable system as a "state of the art" cable system but rather was intended to cover past obligations prior to closing such as the obligation of Galaxy to pay Leeward appropriate revenues under the Bahia Oaks Contract during a particular year.[9]

Galaxy contends that paragraph 6 is "a section designed to maintain the *status quo ante*" during any due diligence period between signing and closing.[10] And, according to Galaxy, because Cablevision waived the due diligence period, any of Galaxy's obligations under paragraph 6 between signature and closing were never triggered and became a nullity.

Lastly, Galaxy argues that even if the Court were to agree with Cablevision's interpretation of the contract language, Cablevision is not entitled to rely on an express representation that it knew not to be the case.

### III. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other

---

[9] Doc. 99, n. 3.

[10] Doc. 99, ¶ 9.

evidence in the record "in the light most favorable to the nonmoving party."[11]  As the Supreme Court held in Celotex Corp. v. Catrett,[12] the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact.  If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove."[13]  The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

In the instant case, Galaxy and Cablevision both represent in their respective motions that there are no issues of material fact in dispute concerning the issue of "state of the art" and that the Court may rule as a matter of law as to liability on this issue. In addition, at the final pre-trial conference conducted on September 20, 2006, the parties confirmed on the record that there were no issues of material fact in dispute and that the Court could - and should - resolve this issue on the motions for partial summary judgment.

## IV. **DISCUSSION**

The issue to be addressed by the Court is whether Galaxy or Cablevision is responsible under the APA for the cost of bringing the Bahia Oaks cable system up to "state of the art." To be sure the issue pending before the Court is not whether Galaxy is liable to Leeward under the Bahia Oaks Contract. That issue has not been presented to

---

[11] See Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988).

[12] 477 U.S. 317 (1986).

[13] Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987).

the Court for resolution on a motion for summary judgment and therefore is an issue that will be presented to the jury during the trial of these consolidated cases. This order therefore addresses whether "state of the art" was an obligation that remained with Galaxy pursuant to the APA or was an obligation that was assumed by Cablevision under the provisions of the APA.

In order to determine the respective responsibilities of Galaxy and Cablevision *inter se* the Court must interpret the legal meaning and effect of sections 2c and 6a of the APA, the two sections of the APA that the parties address in support of their respective positions.[14] The Court will discuss each of these sections of the APA in turn. This issue is, of course, an issue of law because the law is well established that the interpretation of a written contract is a matter of law for the courts.[15]

### A.     The State of the Art Obligation Under The Bahia Oaks Contract Is An Assumed Obligation Under Section 2c of the APA

Section 2c of the APA, titled "Assumed Obligations and Liabilities" provides that "[t]he Buyer [Cablevsion] shall assume, pay, discharge, and perform the following (the "Assumed Obligations")." This section lists the Assumed Obligations, among others as: (1) "those obligations and liabilities attributable to periods after the Adjustment Time under the Assumed Contracts," and (2) "all other obligations and liabilities arising out of ... [Cablevision's] ... ownership of the Assets or operation of the Systems after the

---

[14] While the Court will address both section 2c and 6a of the APA, the Court could resolve the motions for partial summary judgment solely under section 2c in view of Cablevision's invitation to the Court in their "Response To Galaxy Cable, Inc.'s Motion For Summary Judgment On The Issue of 'State Of The Art'" (Doc. 113) that the answer to which party is responsible for the state of the art obligation "is found in the language of subparagraph 2c of the APA."

[15] Anthony Distributors, Inc. v. Miller Brewing Co., 941 F. Supp 1567, 1582 (M.D. Fla. 1996).

Adjustment Time." Section 2c then concludes by carving out the obligations that remain with Galaxy after closing. Section 2c expressly states that "all obligations and liabilities arising out of or relating to ownership of the Assets or operation of the Systems and arising prior to the Adjustment Time *other than the Assumed Obligations* shall remain and be the obligations and liabilities solely of the Seller [Galaxy].[16]

Cablevision misinterprets section 2c to mean that the duty to provide a state of the art system is the responsibility of Galaxy because it is an obligation that "arose prior to the Adjustment Time."[17] This interpretation, however, is contrary to the clear and express words used in this section of the agreement. It is a cardinal rule of contract interpretation that "contractual language must be read to have the plain meaning of the words used."[18]

Under the terms of this section, after closing, Cablevision is required to "assume ... and perform" the "Assumed Obligations," which expressly includes the "Assumed Contracts." Assumed Contracts" is a defined term in the APA and means "the Agreements, the Licenses and the Contracts as listed on Schedule 4.f...".   Schedule 4.f. of the APA, expressly lists the "Bahia Oaks/Oak Creek" cable television system as one of the assets that was transferred to Cablevision. As such, there is little dispute that

---

[16] See Doc. 99, Ex. J, ¶2c.

[17] The term "Adjustment Time" is defined term in the APA and means "midnight, Central Time, on the Closing Date." In other words Adjustment Time is virtually synonymous with the closing date, which in this case was April 29, 2005.

[18] Marx v. Clear Channel Broadcasting, Inc., 887 So.2d 405, 406 (Fla. Dist. Ct. App. 2004); Waksman Enterprises, Inc. v. Oregon Properties, Inc., 862 So. 2d 35, 40 (Fla. Dist. Ct. App. 2003).

the obligations under the Bahia Oaks Contract - which include the continuing obligation to provide a state of the art cable system - was an assumed obligation of Cablevision.

Moreover, the "carve out" at the end of section 2c - for obligations and responsibilities that remain with Galaxy after closing - specifically excludes "Assumed Obligations." Accordingly, obligations that Galaxy may owe to Leeward for payments under the Bahia Oaks Contract - while Galaxy owned and operated the cable system - are not "Assumed Obligations" and remain the responsibility of Galaxy. In contrast, the obligation to operate a cable system as a state of the art system is an affirmative continuing obligation of the cable operator under the Bahia Oaks Contract and, therefore, is an obligation that Cablevision is obligated to "assume, pay, discharge and perform."[19]

This, of course, is different from any liability for damages that Galaxy may owe to Leeward for breach of contract that occurred prior to closing. For example, monies owed to Leeward for payments previously due and owing would continue to be the responsibility of Galaxy. And, had Leeward obtained a judgment for money damages against Galaxy prior to the closing for the costs associated with making the system state of the art, such a liability would not have been an Assumed Obligation because it would be a liability owed to Leeward separate from the continuing obligation under the Bahia Oaks Contract. However, that is not what occurred here. Instead, Leeward's claim for damages for failing to install a state of the art system at Bahia Oaks remains a

---

[19] Further, from a pragmatic and common sense perspective Cablevision's interpretation would result in the unworkable situation of requiring a cable company to provide substantial renovations to a cable system that the cable company no longer owns and no longer has any control over.

contingent liability yet to be determined. Once such liability and damages have been determined the responsibility to "pay, discharge and perform" is upon Cablevision, the party who assumed the obligation and the party who is required to perform under the Bahia Oaks Contract. This is what the APA provides in clear and unambiguous language and therefore the Court is required to enforce the contract according to its plain meaning. While the Court fully understands the economic reasons for Cablevision's position, "it is [not] the role of the trial court to rewrite a contract ... to relieve a party from what turns out to be a bad bargain."[20]

### B. *Section 6a* of the APA Is Inapplicable Because There Was No Due Diligence Period

Although, Cablevision expressly disavows that it is relying upon section 6a of the APA, Cablevision's motion for partial summary judgment discusses this section[21] and in Galaxy's response, Galaxy goes to great lengths to argue that section 6a does not support Cablevision's position that Galaxy is responsible for the obligation to bring the Bahia Oaks system up to state of the art. Consequently, the Court will briefly address the applicability of this section of the APA.

Section 6a is a covenant of the APA and is entitled "Affirmative Operational Covenants of the Seller." One of the affirmative obligations of the Seller [Galaxy] under section 6a was to "perform its obligations under all of the Contracts without default." While at first blush this obligation to perform without default might seem apply to the obligation of the cable provider under the Bahia Oaks Contract to use equipment and

---

[20] Feldman v. Kritch, 824 So. 2d 274, 277 (Fla. Dist. Ct. App. 2002).

[21] See, Doc. 85 ¶8.

service that is state of the art, a closer reading of section 6a unequivocally limits this obligation to the due diligence period only.

Section 6a provides that the obligations of Galaxy under this section apply to the time period "between the date of this Agreement and Closing." In other words section 6a concerns only the obligations of Galaxy during a due diligence period in order to maintain the status quo of the contracts and assets to be transferred between the time the agreement was reached and the time the deal actually closed. This provision is, however, totally inapplicable for the simple reason that Cablevision through Jess King waived any due diligence period when it elected to execute the APA and close on the same date.[22] Accordingly, there was never any time period "between the date of this Agreement and Closing" and, thus, the obligations of Galaxy under section 6a of the APA never applied.

## C. State of the Art As Applied To Cablevision's Affirmative Defenses

Although Galaxy has requested in its motion that the Court enter partial summary judgment in its favor on Cablevision's Second, Third, Fifth and Eighth affirmative defenses, all of which Galaxy suggests concern the issue of "state of the art," the parties have not addressed the legal bases or legal theories allegedly raised by Cablevision in any of these affirmative defenses. For this reason, the Court cannot enter judgment in favor of Galaxy on these affirmative defenses simply because the Court has determined that Cablevision is responsible for maintaining a state of the art cable system under the Bahia Oaks Contract. However, to the extent that these affirmative

---

[22] See Exhibit D, King Depo., p. 232, lines 18-24 to p. 233, lines 1-3.

defenses concern whether Galaxy is responsible for the obligation to bring the Bahia Oaks cable system up to state of the art, the Court will briefly address each of the challenged affirmative defenses.

In its second affirmative defense Cablevision alleges that due to Galaxy's failure to maintain the Bahia Oaks cable system as a "state of the art" standard, Galaxy should not be entitled to obtain equitable relief because Galaxy comes into court with unclean hands. The doctrine of unclean hands is an "equitable remedy which allows the court to deny a party affirmative equitable relief by a court of equity on the ground that [the] conduct has been inequitable, unfair, dishonest, fraudulent or deceitful as to the controversy in issue."[23] A defendant asserting unclean hands as a defense must demonstrate that plaintiff's wrongdoing was directly related to the claim asserted in the complaint and that defendant was personally injured by plaintiff's conduct.[24] A mere assertion that a party has unclean hands without supporting facts is insufficient.[25]

Essentially, Cablevision alleges that Galaxy is not entitled to equitable relief because Galaxy failed to fulfill its obligations under sections 6 and 2 of the APA.[26] As

---

[23] See, Henry v. Ecker, 415 so.2d 137 (5th DCA Fla. 1982).

[24] See, Groves v. Patricia J. Dury, M.D., P.A., 2006 WL 2556944 (M.D. Fla. 2006); Calloway v. Partners Nat'l Health Plans, 986 F.2d 446, 450-51 (11th Cir. 1993).

[25] See Groves, 2006 WL 2556944; Cf. CBS Broadcasting v. Primetime 24 Joint Venture, 48 F.Supp.2d 1342, 1359 (S.D. Fla. 1998) (Finding that the fact parties are involved in a dispute over requirements established by the Satellite Home Viewer Act is insufficient to support the defense of unclean hands).

[26] Cablevision also alleges in the second affirmative defense that the representations in section 4c of the APA support in some way this affirmative defense. However, neither party even mentions section 4c in their respective motions or responses and, therefore, the Court will not address this section of the APA. However, even if section 4c had been raised it is totally inapplicable to the issue of "state of the art" and certainly is not relevant to the assertion of the defense of unclean hands.

discussed in detail above, as a matter of law, Galaxy did not violate either section 2c or section 6a of the APA and, therefore, Cablevision's interpretation of these sections of the APA fail to support its affirmative defense of unclean hands.

Cablevision's third and fifth affirmative defenses are based on the theories of estoppel and detrimental reliance. The Court combines the discussion on these affirmative defenses because, although Cablevision asserts detrimental reliance as a separate affirmative defense, detrimental reliance is actually a requirement for proving estoppel.[27]

Cablevision argues that Galaxy should be estopped from seeking specific performance due to Galaxy's alleged breach of paragraph 2c of the APA. The basic elements of estoppel include a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee and which does induce such action or forbearance. Such promise is binding if injustice can be avoided only be enforcement of the promise.[28]

Cablevision has not produced any evidence that it detrimentally relied upon a representation or promise by Galaxy that the Bahia Oaks cable system was "state of the art." To the contrary, the record is replete with evidence that Cablevision knew full well before the deal closed that the Bahia Oaks cable system was not up to state of the art. This fact is highlighted by the deposition testimony of Mr. King in which he descriptively acknowledged that he knew prior to the execution of the APA that the Bahia Oaks

---

[27] See Advanced Marketing Systems Corp. v. ZK Yacht Sales, 830 So.2d 924 (4th DCA Fla.2002).

[28] See Acosta v. District Bd. Of Trustees of Miami-Dade Community College, 905 So.2d 226 (3d DCA Fla. 2005).

"systems stink."[29] Accordingly, any claim by Cablevision that Galaxy is estopped from requesting specific performance of the APA because it detrimentally relied upon section 2c of the APA is without merit.

Further, although the parties each discuss the issue of whether Cablevision may advance a claim for breach of contract even if Cablevision did not rely upon an express representation in the APA, the Court need not address this issue because Cablevision has not asserted any claim in this case against Galaxy for breach of an express warranty. Admittedly, while the law on this issue is somewhat unsettled,[30] the fact remains that there are no claims in this case by Cablevision based upon the breach of an express warranty in the APA. The only express representations and warranties made by Galaxy in the APA, are contained in paragraph 4,[31] none of which concern or relate to the issue of which party is responsible for the obligation to bring the Bahia Oaks cable system up to state of the art. As such, whether reliance should or should not be considered an element of a claim for breach of an express warranty is not relevant to resolution of the instant motions for partial summary judgment.

Lastly, with regard to Cablevision's eighth affirmative defense, Cablevision alleges that Galaxy failed to mitigate its damages by failing to provide "state of the art" equipment and service to Bahia Oaks and continuing to operate the system after April 29, 2005. However, this affirmative defense has no application to the claims in this case

---

[29] See Doc. 99, Ex. D, King Depo, at p. 100, line 16 through p. 102, line 4

[30] Compare, e.g. Royal Typewriter Co. v. Zerographic Supplies, 719 F.2d 1092, 1100 (11th Cir. 1983) and Hobco, Inc. v. Tallahassee Association, 807 F.2d 1529, 1532-33 (11th Cir. 1987) with Southern Broadcast Group, LLC v. GEM Broadcasting, Inc., 145 F.Supp.2d 1316 (M.D. Fla.).

[31] See Doc. 99, Ex. J, ¶ 5.

because the duty to mitigate only arises when a contract has been breached.[32] As discussed above the Court has concluded that Cablevision and not Galaxy is responsible for the state of the art obligations under the Bahia Oaks Contract and, therefore, the duty to mitigate damages by a party to a contract is inapplicable. Moreover, the duty to mitigate is wholly inapplicable to this type of situation because Galaxy has not owned or controlled the Bahia Oaks cable system since April 29, 2005 and, thus, as a practical matter, does not have any contractual rights to intervene in the affairs of Bahia Oaks. As such, there is nothing Galaxy could have done to bring the Bahia Oaks cable system up to state of the art pending resolution of this dispute even if it had wanted to.

## V. CONCLUSION

Accordingly, for the reasons discussed above: (1) Galaxy's Motion for Partial Summary Judgment on the Issue of "State of the Art" (Doc. 98) is due to be **GRANTED** with regard to Cablevision's Third Amended Counterclaim, and with regard to Cablevision's Second, Third, Fifth and Eighth Affirmative Defenses, to the extent that

---

[32] See Thomas v. Western World Ins. Co., 343 So.2d 1298, 1303 (2d DCA Fla. 1977).

state of the art is an issue raised in these defenses,[33] and (2) Cablevision's Motion for Partial Summary Judgment (Doc. 85) is due to be **DENIED**.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on October 6, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:

All Counsel

---

[33] Even though the Court is granting Galaxy's Motion For Partial Summary Judgment the Court cannot enter final judgment in Galaxy's favor with regard to Cablevision's Third Amended Counterclaim because there is still pending a motion for partial summary judgment on the issue of written consent. This issue will be addressed by the Court in a separate order. To the extent that there remains an issue of fact for the jury to resolve as to whether sufficient consent was given by Leeward to the transfer of the Bahia Oaks Contract, the Court cannot enter final judgment until this issue is resolved because the obligation under the APA to assume the Bahia Oaks Contract is contingent upon Leeward consenting to the transfer of the Bahia Oaks cable system to Cablevision. Accordingly, final determination of whether Cablevision is obligated to assume and operate the Bahia Oaks Contract is dependent upon resolution of this issue.